David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
1000 3rd St., Suite 1605
San Francisco, CA 94158
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
JAMES B.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES B.<br><br>           Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC; and DOES 1 THROUGH 10<br><br>           Defendants. | Case No.<br><br>**PLAINTIFF JAMES B.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

   Plaintiff, JAMES B. herein sets forth the allegations of this Complaint against Defendants KAISER FOUNDATION HEALTH PLAN, INC ("Kaiser"); and DOES 1 THROUGH 10.

   ///

   ///

   ///

   ///

   ///

   ///

---
1
**COMPLAINT**                                                                                                   **CASE NO.**

## PRELIMINARY ALLEGATIONS

### JURISDICTION

1. Plaintiff brings this action for relief pursuant to Section 502 (a) (1) (B) and Section 502 (a) (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132 (a) (1) (B). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502 (e) and (f), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, enforcing Plaintiff's rights, and for the purpose of seeking equitable relief as set forth below and may be fashioned by the court in its discretion under the terms of an employee benefit plan.

3. Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendant's improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; attorneys' fees and costs; surcharge; and other equitable relief that is appropriate based on the alleged misconduct at issue herein.

### PARTIES

4. At all relevant times, James B. participated in an employee welfare benefit plan sponsored by his employer, Procept Biorobitcs, the Kaiser Permanente HMO 20/500 ("the Plan"), within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1).

5. KAISER is an insurance company authorized to transact and currently transacting the business of insurance in the State of California.

6. At all relevant times, the Plan was a fully insured plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff. This action involves mental health claims and benefits denied by a Kaiser entity.

///

///

# FACTS

7. The Plan guarantees, warrants, and promises "Mental Health Services" for members and their beneficiaries, including but not limited to: health care services, mental health care, and treatment at issue herein.

8. J.B. is James B.'s son, and was, at all relevant times, a member, participant, and a beneficiary of the Plan.

9. At all relevant times, the Plan was in full force and effect.

10. The Plan guarantees, promises, and warrants benefits for medically necessary health care services.

11. The Plan defines "Medically Necessary" mental health or substance use disorder care services as:

> For services related to mental health or substance use disorder treatment, a Service is Medically Necessary ("Medically Necessary") if it is addressing your specific needs, for the purpose of preventing, diagnosing, or treating an illness, injury, condition, or it's symptoms, including minimizing the progression of that illness, injury, condition, or it's symptoms, in a manner that is all of the following:
>
> • In accordance with generally accepted standards of mental health and substance use disorder care,
>
> • Clinically appropriate, in terms of type, frequency, extent, site and duration,
>
> • Not primarily for the economic benefit of the health care service plan and subscribers or for the convenience of the patient, treating physician, or other health care provider.

12. The Plan guarantees coverage for inpatient and outpatient treatment of mental health conditions.

13. The Plan provides coverage for inpatient treatment at an acute level of care at psychiatric hospitals.

14. The Plan provides coverage for inpatient treatment at a sub-acute level of care at Residential Treatment Centers/Facilities.

15. The Plan states that if a Service is covered by not available at a particular Plan Facility, we will make it available to you at another facility.

16. California's Mental Health Parity Act, Health & Safety Code §1374.72, and Insurance Code § 10144.5, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses.

**A. J.B.'s Claims**

17. At all relevant times, J.B. was diagnosed with, *inter alia*, Attention-deficit hyperactivity disorder, Generalized anxiety disorder, Oppositional defiant disorder, and Autism.

18. J.B. struggled with school and relationships with teachers.

19. J.B. struggled emotionally and socially both in and outside of the home.

20. J.B. showed concerning behavioral issues including property destruction, outbursts of rage, retaliatory behavior, and theft.

21. J.B. assaulted his younger brother.

22. J.B. made concerning comments to peers in school about guns and inappropriate sexual remarks to female peers at school and engaged in online harassment.

23. J.B. displayed a lack of awareness for his own safety and played with matches and knives.

24. J.B. exhibited emotional outbursts where he cried, yelled, and hit his parents or siblings, and attempted to trap them using physical force.

25. J.B. attempted multiple forms of outpatient therapy. This included treatment with therapists and psychiatrists. Despite the various modalities of treatment, J.B.'s condition worsened, to the point where his treating medical professionals and others familiar with J.B.'s mental health, recommended as medically necessary that J.B. be treated at a sub-acute inpatient level of care.

26. At the recommendation of J.B.'s treatment providers, J.B. was admitted to Huntsman Mental Health Institute ("Huntsman").

27. Following his treatment at Huntsman, the treatment providers at Huntsman recommended that J.B. be transferred to a treatment facility immediately following his discharge. Blue Fire Wilderness Therapy ("Blue Fire") was recommended as the best choice for J.B by his treating providers.

28. J.B. was admitted to Blue Fire.

**B. Kaiser's Denial of J.B.'s Treatment at Huntsman**

29. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for J.B.'s treatment at Huntsman.

30. Kaiser denied J.B.'s claims for treatment at Huntsman on the basis that "payer deems the information submitted does not support this level of service."

31. James B. submitted a level one member appeal of Kaiser's denial.

32. In his appeal, James B. pointed out that J.B.'s treatment at Huntsman is a covered service under the terms of the Plan, and that J.B.'s treatment was medically necessary.

33. Huntsman is a psychiatric hospital that specializes in acute psychiatric care and stabilization of acute symptoms.

34. James B. also pointed out in his appeal that Kaiser had zero facilities offering psychiatric impatient hospital services in James B.'s network within 100-mile radius of their home, let alone including facilities for children and adolescents, but there were 25 hospitals for medical services in network within the same 100-mile radius.

35. Kaiser is required to provide acute behavioral health hospital coverage in the same manner as physical medical hospital coverage, including access to covered behavioral health services, and medical services.

36. Kaiser has a large provider network disparity making it difficult for members, including James B., to find appropriate in-network treatment.

37. Kaiser denied the appeal, and in doing so switched its denial rationale, now claiming that "the non-emergent services performed were not authorized with an appropriate referral."

38. As a result of Kaiser's denials, Plaintiff was forced to pay for J.B.'s care and treatment at Huntsman from his own personal funds

### C. Kaiser's Denial for J.B.'s Treatment at Blue Fire

39. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for J.B.'s treatment at Blue Fire.

40. Kaiser denied J.B.'s claims for treatment at Blue Fire on the basis that it was not prior authorized.

41. Plaintiff submitted a Level One Appeal of Kaiser's denial of J.B.'s treatment at Blue Fire.

42. Plaintiff's appeal pointed out, *inter* alia, that there is no language in the Plan that states failure to obtain pre-authorization results in a complete denial or reduction of benefits, and that the Plan specifically provides for the submission of post-service claims.

43. The Plan is imposing more restrictive treatment limitations on behavioral health benefits than are applied to comparable medical benefits.

44. Kaiser provided zero in-network facilities for behavioral health for children and adolescents within 100 miles of James B., compared to the 25 in-network hospitals for medical services.

45. At all times relevant, J.B.'s treatment at Huntsman and Blue Fire was medically necessary, based upon the reasoned medical opinions of his treaters.

46. Not only was Kaiser's purported denial rationale unreasonable in light of the obvious medical necessity for J.B.'s ongoing mental health care, but the denials also violated the California Mental Health Parity Act, Health & Safety Code §1374.72 and Insurance Code § 10144.5, as well as the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for approving all of the care for J.B. that is at issue herein.

47. Kaiser denied Plaintiff's Blue Fire appeal.

48. As a result of Kaiser's denials, Plaintiff was forced to pay for J.B.'s care and treatment at Blue Fire from his own personal funds.

49. Plaintiff has exhausted all administrative remedies regarding the denial of J.B.'s mental health benefits.

///

///

///

///

**CLAIMS FOR RELIEF**
**FIRST CAUSE OF ACTION**
**Recovery of Benefits Due Under an ERISA Benefit Plan**
**(Against KAISER PERMANENTE dba KAISER FOUNDATION HEALTH PLAN, INC; and DOES 1-10; Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

50. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

51. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

52. At all relevant times, Plaintiff and his son J.B. were insured under the health care plan at issue herein, and Plaintiff's son, J.B., met the covered health services and medical necessity criteria for treatment required under the terms and conditions of the Plan.

53. By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

54. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

**PRAYER FOR RELIEF**

**AS TO ALL DEFENDANTS**

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

55. Declare that Defendants violated the terms of the Plan by failing to provide mental health benefits;

56. Order Defendants to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

57. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

58. Order Defendants to cease using acute criteria to evaluate claims involving sub-acute mental health treatment;

59. Order that each fiduciary found liable for breaching his/her/its duties to disgorge any profits made through the denial of medically necessary claims through the use of inconsistent care guidelines. This includes, but is not limited to, any violation of ERISA §§ 404 and 406;

60. For appropriate equitable relief pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3), including but not limited to, a declaration of Plaintiff's rights to a full and fair review under ERISA, and a declaration of Plan participants' and beneficiaries' rights to a full and fair review;

61. For a surcharge relief;

62. An injunction against further denial of Plaintiff's benefits pursuant to 29 U.S.C. §§ 1132(a)(3);

63. Provide such other relief as the Court deems equitable and just.

Dated: August 6, 2025                                Respectfully submitted,

**DL LAW GROUP**

By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, JAMES B.